# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STEVEN BRADFORD,<br><br>Defendant. | No. 06-CR-12-LRR<br><br>**ORDER** |

_____

## *TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.  STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III. OBJECTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.  PROCEDURAL AND FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . *2*

*V.   THE MERITS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*VI.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

## *I.   INTRODUCTION*

Before the court is the government's Objection ("Objections") (docket no. 28) to Chief Magistrate Judge John A. Jarvey's Report and Recommendation (docket no. 26) granting Defendant's Motion for Specific Performance of Plea Agreement and Motion to Dismiss (docket no. 10).

## II. STANDARD OF REVIEW

A district court judge must make a *de novo* determination of those portions of a magistrate judge's report or recommendation to which a party objects. 28 U.S.C. § 636(b)(1); *see, e.g., United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003). The judge may accept, reject or modify, in whole or in part, the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1). Because the government has made timely and specific objections in this case, the following *de novo* review is required. *Id.*

## III. OBJECTION

The government objects to the legal conclusion in the Report and Recommendation that the government breached its December 12, 2005 plea agreement with Defendant when the grand jury charged him in the instant one-count Indictment. Specifically, the government contends that Magistrate Judge Jarvey (1) improperly reasoned that the phrase "arising from" is broader than the phrase "based upon" and (2) ignored the language in the plea agreement which provides: "If this office becomes aware of evidence of additional crimes warranting criminal prosecution, all information in our possession could be used in such a prosecution." For these reasons, the government objects to Magistrate Judge Jarvey's recommendation to order specific performance of the plea agreement and to dismiss the Indictment.

## IV. PROCEDURAL & FACTUAL BACKGROUND

Neither party objects to Magistrate Judge Jarvey's factual findings or his recitation of the procedural history of this case. The court has independently reviewed the record and finds the Report and Recommendation accurately sets forth the facts of the case and the prior proceedings up until the time of the filing of the Report and Recommendation. The court, therefore, accepts the procedural history and factual findings as set forth in the Report and Recommendation. 28 U.S.C. § 636(b)(1); *see, e.g., Lothridge*, 324 F.3d at

600.

After Magistrate Judge Jarvey filed the Report and Recommendation on May 18, 2006, the government filed the instant Objections on May 19, 2006. Defendant filed a Response on the same date.

## V. THE MERITS

As noted in the Report and Recommendation, the plea agreement at issue in this case contained the following statement:

> The U.S. Attorney's Office for this District . . . will file no additional Title 21 drug-related criminal charges based upon *or arising from* information now in our possession. If this office becomes aware of evidence of additional crimes warranting criminal prosecution, all information in our possession could be used in such a prosecution.

(Emphasis added.) The italicized portion of this excerpt was handwritten into the plea agreement by Defendant. Neither party objects to Magistrate Judge Jarvey's legal conclusion "that December 12, 2005 is the applicable date for determining what information was in the government's possession." *United States v. Bradford*, No. 06-CR-12, 2006 WL 1390401, at *4 (N.D. Iowa May 18, 2006).

The December 12, 2005 plea agreement is a contract between Defendant and the government. *Margalli-Olvera v. INS*, 43 F.3d 345, 351 (8th Cir. 1994). Ordinary contract principles apply. *United States v. Norris*, 439 F.3d 916, 919 (8th Cir. 2006). To interpret the plea agreement, the court must apply the federal common law of contracts, which is informed by federal cases, state cases and the Restatement (Second) of Contracts, insofar as such jurisprudence fairly typifies the general law of contracts. *See United States v. Andreas*, 216 F.3d 645, 663 & 663 n.5 (7th Cir. 2000) (applying federal common law to interpret an immunity agreement and relying on state cases, federal cases and the

Restatement (Second) of Contracts).

The court agrees with Magistrate Judge Jarvey's conclusion that the phrase "arising from" is broader than the phrase "based upon." In the federal common law of contracts, "arising from" is a broad contractual phrase that encompasses almost any causal connection or relationship. *See Interface Group-Nevada, Inc. v. Freeman Decorating Co.*, 473 S.E.2d 573, 575 (Ga. Ct. App. 1996) (concluding that the phrase "arising from" in contracts "has been held to encompass almost any causal connection or relationship" (internal quotation omitted)); *see also Acceptance Ins. Co. v. Syufy Enters.*, 81 Cal. Rptr. 2d 557, 561 (Cal. Ct. App. 1999) ("California courts have consistently given a broad interpretation to the terms 'arising out of' and 'arising from' in various kinds of insurance provisions. . . . [This language] connotes only a minimum causal connection or incidental relationship."); *cf. Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003) (holding the "arising from" requirement in test for specific personal jurisdiction is satisfied "'if the cause of action is 'related to' or 'connected with' the defendant's forum contacts.'" (quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 n.2 (6th Cir. 1999)); *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 391 (5th Cir. 2002) (construing "arising out of" for purposes of Fair Debt Collection Practices Act as "in short, 'incident to, or having connection with'" and commenting that the phrase is "of much broader significance than 'caused by'" (quoting *Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co. of Wis.*, 189 F.2d 374, 378 (5th Cir. 1951)); *Meade v. Ries*, 642 N.W.2d 237, 243 (Iowa 2002) (defining "arises out of" for purposes of workers' compensation statute as "a causal connection"); *Galloway v. Hardison*, 60 S.W.2d 155, 157 (Tenn. 1933) (holding that "arising from partnership transactions" in a will referred to "all obligations growing out of such a business connection and association; whatever accounts were incident to the partnership relationship"). To the contrary, the phrase

"based upon" is a narrower phrase that implies "a degree of closeness . . . that is considerably greater than common law causation requirements."[1] *See Transatlantic Shiffahrtskontor, GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 390 (2d Cir. 2000) (citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993)); *see also Nelson,* 507 U.S. at 358 (holding that "[t]he only reasonable reading of [the term "based upon"] calls for something more than a mere connection with . . . or relation to"); *cf. BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 682 (8th Cir. 2002) (holding that a claim is "based upon" events in the United States, for purposes of Foreign Services Immunities Act, "'if those events establish a legal element of the claim'" (quoting *Santos v. Compagnie Nationale Air France*, 934 F.2d 890, 893 (7th Cir. 1991)); *Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1045-47 (8th Cir. 2002) (holding allegations in *qui tam* suit are "based upon" public disclosure "whenever the allegations in the suit and in the disclosure are the same"). *But see Mount Vernon Fire Ins. Co. v. Creating Housing Ltd.*, 668 N.E.2d 404, 406 (N.Y. 1996) ("There is no significant

---

[1] The government stresses that Defendant offered the phrase "arising out of" (the phrase is handwritten on the government's standard plea bargain form) and, therefore, any ambiguity in the plea agreement should be held against him. *See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) ("[A] court should construe ambiguous language against the interest of the party that drafted it."); Restatement (Second) of Contracts § 206 (1981) (recognizing that "that meaning is generally preferred which operates against the party who supplies the words"). The court finds, however, that there is no ambiguity in the language used; the plea agreement is clear on its face. *See Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 668 N.E.2d 404, 406 (N.Y. 1996) (finding that "based on" and "arising out of" were not ambiguous phrases). In any event, even if the language were ambiguous, it is equally true that ambiguities in plea agreements should be construed against the government. *See, e.g., United States v. Jensen*, 423 F.3d 851, 854 (8th Cir. 2005) ("Where a plea agreement is ambiguous, the ambiguities are construed against the government.") (citing *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003) (en banc)).

difference between the meaning of the phrases 'based on' and 'arising out of' in the coverage or exclusion clauses of an insurance policy."), *answer to certified question conformed to*, 93 F.3d 63, 66 (2d Cir. 1996).

With this understanding of the language in the plea agreement, the court also agrees with Magistrate Judge Jarvey that the instant one-count Indictment is a Title 21 drug-related criminal charge "arising from" information in the government's possession on December 12, 2005. Therefore, the court also agrees that the instant Indictment should be dismissed to uphold the government's promise in the plea agreement. The instant prosecution "arises from" information in the possession of the government on December 12, 2005. Count 1 of the Indictment charges Defendant with "knowingly and intentionally distribut[ing] a mixture or substance containing a detectable amount of heroin, a Schedule I Controlled Substance, to J.H. [on June 10, 2004], resulting in the death of J.H. from use of the controlled substance," in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Count 1 "arises from" the following information in the possession of the government on December 12, 2005:

1. J.H. died of a heroin overdose on June 11, 2004;

2. Rachel Hoskins and James Callanan were with J.H. at the time of his death and were aware of some of the circumstances surrounding his purchase of the heroin that killed him;

3. According to Hoskins, J.H. went into an unidentified house around Seventeenth Street SE and Eighth Avenue SE to purchase heroin;

4. According to Callanan's initial statements to law enforcement personnel, J.H. went into an alley around Fifteenth Street SE and Fifth Avenue SE to purchase heroin from "a black guy in his mid 20's";

6

5. The names of thirteen people who Callanan claimed sold heroin in Cedar Rapids, including "B—possibly Steven, black male, PBX # 521-0581";

6. Telephone number 521-0581 is registered to an account and address belonging to Tiffany Jones;

7. According to Drug Enforcement Administration Special Agent Jarad Harper, Defendant's nickname was "B"; there were at least four people in Cedar Rapids involved in heroin distribution with the street-name "B";

8. Callanan later drew a map in which he indicated that J.H. purchased the heroin that killed him at a residence in a two-block area on Fifth Avenue SE between Twelfth and Fourteenth Streets SE;

9. According to Iowa Department of Criminal Investigation Special Agent Wade Kisner, in a follow-up interview, Callanan "identified the following subjects as having a connection to a residence in that general location of Fifth Avenue SE [on the map he drew] . . . A black male named B. He states that B was popped and taken in at the same time that POPS was arrested."; and

10. "POPS" is the street-name for David Pelham, the confidential informant who arranged for the controlled buys from Defendant, which led to Defendant's prosecution and plea agreement in Case Number 05-CR-85.

There is clearly some "causal connection or relationship" between this information, all of which was in the government's possession on December 12, 2005, and the instant Indictment. Absent knowledge of J.H.'s death, the information provided by Callanan and

7

Hoskins and the information discovered by Harper and Kisner, the government would not have sought an Indictment against Defendant for the instant offense. The court agrees with Magistrate Judge Jarvey that "[t]he government's post-December 12, 2005 investigation was a continuation of an investigation that had been ongoing for some time." *Bradford*, 2006 WL 1390401, at *6. The instant Indictment clearly "arises from" the first part of this investigation.

This is not a case where the government's investigation began after the plea agreement was signed. The investigation was ongoing; Kisner testified that Hoskins was not re-interviewed until December 16, 2005 because (1) investigators wanted to re-interview Callanan first and (2) they were not able to conduct Hoskins' interview sooner because of demands on their time and resources. The mere fact the government deliberately proceeded slowly with the investigation does not undermine the court's conclusion that there is a causal connection between the Indictment and the information in the government's possession early-on in that investigation.

The government correctly points out that it did not re-interview Hoskins until after the plea agreement was signed and, therefore, did not have the following information in its possession on December 12, 2005: (1) Hoskins identified Defendant as the person nicknamed "B" who sold J.H. the heroin; (2) it was possible, according to Hoskins, that J.H. used her cell phone to call "B" to arrange the heroin purchase; and (3) Hoskins' phone records reveal phone traffic between Defendant's and Hoskins' phones. Although this later-discovered information may be information upon which the government based the instant Indictment, this does not undermine the court's conclusion that the Indictment clearly "arises from" information gathered in the first part of the investigation and in the government's possession on December 12, 2005.

Alternatively, the government contends that the instant prosecution is not barred by

8

the plea agreement because the sentence in the relevant portion of the plea agreement quoted above states that "[i]f this office becomes aware of evidence of additional crimes warranting criminal prosecution, all information in our possession could be used in such a prosecution." The court finds this argument is flawed because the use of "all information" is conditioned upon the government becoming "aware of evidence of additional crimes." Here, "additional crimes" clearly refers to crimes that are *not* the crimes involved in the plea bargain, i.e., the three counts in the original indictment in Case Number 05-CR-85 and all "additional Title 21 drug-related criminal charges based upon or arising from information now in [the government's] possession [on December 12, 2005]." The court has already found that the instant Indictment is an additional Title 21 charge arising from information in the government's possession on December 12, 2005. Therefore, this quoted sentence does not permit the government to prosecute Defendant for the crime charged in the instant Indictment. The government remains free to prosecute Defendant for any non-Title 21 crimes and for all Title 21 crimes not "arising from" information in the government's possession on December 12, 2005. Pursuant to the plea agreement, if the government institutes such a prosecution, it may use all information in its possession.

Accordingly, the court finds the instant prosecution breaches the plea agreement between the government and Defendant in Case Number 05-CR-85. When the government sought the instant Indictment, it broke its promise not to charge Defendant with additional Title 21 crimes arising from information in the government's possession on December 12, 2005. *See United States v. Fowler*, 445 F.3d 1035, 1037 (8th Cir. 2006) ("[P]lea agreements [are] contracts, requiring the parties to fulfill their obligations . . . ."). The appropriate remedy in this case is specific performance, i.e., dismissal of the instant

Indictment.[2] *See id.* (noting that the available remedies include (1) specific performance and (2) withdrawal of the guilty plea). The instant Indictment shall be dismissed.

### *VI. CONCLUSION*

**IT IS THEREFORE ORDERED**:

(1) The government's Objection (docket no. 28) is **OVERRULED**;

(2) Chief Magistrate Judge John A. Jarvey's Report and Recommendation (docket no. 26) is **ADOPTED**;

(3) Defendant's Motion for Specific Performance of Plea Agreement and Motion to Dismiss (docket no. 10) is **GRANTED**; and

(4) The Indictment (docket no. 1) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**DATED** this 2d day of June, 2006.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[2] The government does not argue that Judge Jarvey chose the wrong remedy.